**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.

MERCER GLOBAL ADVISORS INC.,

      Plaintiff,

   v.

FEDERAL INSURANCE COMPANY,

      Defendant.

---

### COMPLAINT AND JURY DEMAND

Plaintiff Mercer Global Advisors Inc. ("Mercer"), by and through its counsel Holland & Hart LLP, respectfully submits this Complaint and Jury Damand against Defendant Federal Insurance Company ("Chubb").

## I.    <u>INTRODUCTION</u>

1. This is an insurance coverage dispute arising from Chubb's failure to provide the full coverage owed to Mercer under a primary Asset Management Protector policy issued by Chubb, Policy No. 8400-2015 ("Policy"), for the policy period June 1, 2023, through June 30, 2024. *See* Ex. A.

2. Specifically, Chubb has wrongfully refused to treat two closely related Financial Industry Regulatory Authority ("FINRA") Arbitration claims and a subpoena ("Subpoena") as "Related Claims" under the Policy, thereby improperly subjecting Mercer to two separate $1,000,000 self-insured retentions and unreasonably delaying and limiting its reimbursement of Mercer's defense fees and costs.

1

## II.   PARTIES

3.     Plaintiff Mercer is a corporation organized under the laws of the State of Delaware, with its principal place of business located at 1200 17th Street, Suite 2000, Denver, Colorado 80202. Mercer is a subsidiary of OG Crimson Holdings, L.P., the Named Insured under the Policy.

4.     Defendant Chubb is an insurance company incorporated under the laws of the State of Indiana, with its principal place of business at Capital Center, 251 North Illinois, Suite 1100, Indianapolis, Indiana 46204.

## III.   JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because the matter in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states.

6.     Complete diversity of citizenship exists because Plaintiff and Defendant are citizens of different states: Plaintiff Mercer is a citizen of Delaware and Colorado, and Defendant Chubb is a citizen of Indiana.

7.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this District, including without limitation the issuance of the policies to Mercer (a Colorado insured), the coverage decisions made with respect to Mercer, and Mercer's performance of the Policy terms.

## IV.   GENERAL ALLEGATIONS

**A.     Mercer and the Policy issued by Chubb.**

8.     Mercer is a national SEC-registered investment adviser that provides comprehensive wealth management services to its clients.

9. For the Policy Period of June 1, 2023 through June 30, 2024, Mercer maintained a professional liability insurance program which included the Policy and two excess liability policies.

10. The Policy, Asset Management Protector Policy No. 8400-2015, was issued by Chubb to OG Crimson, with a Maximum Aggregate Limit of Liability of $5,000,000 for all Loss, subject to a $1,000,000 self-insured retention under the Professional Liability Coverage Part. *See* Ex. A.

11. Under the Policy, "[a]ll Related Claims shall be treated as a single Claim first made on the date the earliest of such Related Claims was first made . . . regardless of whether such date is before or during the Policy Period." *Id.* General Terms and Conditions, § V (Limits of Liability, Retention and Coinsurance) at (H).

12. "Related Claims" is broadly defined in the Policy as "all Claims based upon, arising from, directly or indirectly resulting from, in consequence of, *or in any way involving the same or related facts*, *circumstances, situations, transactions or events or the same or related series of facts, circumstances, situations, transactions or events*." *Id.* General Terms and Conditions, § II (General Definitions) at (Z) (emphasis added).

13. The Policy's General Terms and Conditions state "Defense Costs shall have the meaning set forth in the applicable Coverage Part[,]" and "are a part of, and not in addition to, the Limits of Liability . . . and the payment by the Company of Defense Costs shall reduce and may exhaust such Limits of Liability. Defense Costs shall be applied against the applicable Retention(s)[.]" *Id.* General Terms and Conditions, § II (General Definitions) at (E); *id.* General Terms and Conditions, § V (Limits of Liability, Retention and Coinsurance) at (C).

14.     Under the Policy's Professional Liability Coverage Part, "Defense Costs" are defined as "that part of Loss consisting of reasonable costs, charges, fees (including but not limited to attorneys' fees, experts' fees, mediator fees and arbitrator fees) and expenses (other than regular or overtime wages, salaries, fees or benefits of any Insured Person) incurred in defending any Claim and the premium for appeal, attachment or similar bonds." *Id.* Professional Liability Coverage Part, § II (Definitions) at (C); *id.* Endorsement/Rider No. 20, Amend Section II Definitions of Claim and Defense Costs Endorsement (Include Investigations) at (2)(A).

**B.     The Underlying FINRA Matters and Subpoena.**

15.     In December 2021, Mercer acquired certain assets from another investment advisory firm ("acquired firm").

16.     On or about June 21, 2023, Mercer received a written demand letter on behalf of a client ("JT Demand") alleging that before Mercer's acquisition, her investment adviser with the acquired firm inappropriately recommended that she invest substantial funds into a high-risk, options-based hedge fund ("Fund") that the adviser created and managed.

17.     In connection with her demand, JT filed a Statement of Claim ("JT SOC") asserting a FINRA Arbitration against Mercer, the advisors of the acquired firm, the general partner, and the Fund ("JT Arbitration").

18.     In the JT SOC, JT asserted claims against Mercer for breach of fiduciary duty, breach of contract, and aiding and abetting a breach of fiduciary duty, although the allegations were not based on investment advice provided by Mercer. Mercer denied the claims asserted in the JT SOC.

19.     Approximately seven months after JT filed the JT SOC, another client, individually and on behalf of the estate of her husband, filed a substantially similar Statement of Claim ("ME SOC") asserting a FINRA Arbitration against Mercer, the advisors of the acquired firm, and other related entities ("ME Arbitration").

20.     In the ME SOC, ME asserted claims against Mercer for breach of fiduciary duty, breach of contract, aiding and abetting breach of fiduciary duty, and undue influence. Mercer denied the claims asserted in the ME SOC.

21.     The JT and ME Arbitrations are subject to strict rules of confidentiality including without limitation from protective orders and other confidentiality requirements that remain in force. Chubb is aware of and consented to those confidentiality requirements and remains subject to those requirements.

22.     In late 2024, Mercer received a Subpoena relating to the same underlying alleged conduct involving the advisors from the acquired firm and the Fund, as asserted in the JT SOC and ME SOC. The Subpoena and the associated investigation are the subject of strict confidentiality requirements that remain in force.

23.     The JT Demand, JT SOC, ME SOC, and Subpoena are "Related Claims" under the Policy because they arise from the same or related facts, circumstances, and transactions. Specifically, among other reasons, they involve: (a) the same investment advisers; (b) the same acquired advisory firm; (c) the same investment; (d) the same or substantially similar alleged wrongful acts; (e) the same time period; and (f) the same general partner.

**C.      Mercer Timely Provided Notice and Tender to Chubb under the Policy.**

24.     Mercer timely reported the JT Demand to Chubb on July 18, 2023.

25.　　On September 21, 2023, Chubb issued its initial coverage position on the JT Demand, assigning Chubb Claim No. KY23K2657688, and agreeing to advance defense costs to Mercer and two advisors from the acquired firm subject to a $1,000,000 self-retention and reserving certain rights.

26.　　Following the JT Demand, Mercer received the JT SOC.

27.　　Mercer timely submitted the JT SOC to Chubb.

28.　　On April 15, 2024, Chubb issued a letter to Mercer confirming the JT Demand and JT SOC (collectively "JT SOC") were "Related Claims" under the Policy.

29.　　Subsequently, Mercer received the ME SOC.

30.　　Mercer timely submitted the ME SOC to Chubb.

31.　　On April 24, 2024, Chubb issued a consolidated coverage letter, confirming the JT SOC and ME SOC were "Related Claims" under the Policy.

32.　　On August 8, 2024, without providing any meaningful explanation, Chubb inexplicably reversed its initial conclusion that the Claims were "Related Claims" by issuing two supplemental letters, assigning a new Chubb Claim No. KY24K2796519 to the ME Claim and separating its review of coverage for the ME SOC from the JT SOC.

33.　　The effect of Chubb's new position was to subject Mercer to two $1,000,000 self-insured retentions.

34.　　In November 2024, Mercer provided Chubb timely notice of the related Subpoena.

35.　　On February 13, 2025, Chubb assigned Claim No. KY24K3195038 to the Claim arising from the Subpoena and issued a separate coverage letter to Mercer, which subjected Mercer to a third $1,000,000 self-insured retention.

6

36. On May 16, 2025, Mercer sent Chubb a formal written objection for failing to consider the JT SOC, ME SOC, and Subpoena as "Related Claims" under the Policy.

37. In its objection, Mercer restated its position that the matters were "Related Claims" under the Policy subject to one self-insured retention. Among other things, Mercer explained that the JT, ME, and Subpoena matters originate from alleged misconduct related to a single investment fund involving: (1) a common event; (2) similar factual allegations; (3) nearly identical legal claims; (4) similar claimants; and (5) the same alleged common scheme, which is consistent with the information sought in the Subpoena.

38. In response to Mercer's objection, on June 23, 2025, Chubb reversed course yet again and agreed to treat the Subpoena and the JT SOC as "Related Claims" under the Policy, closing Chubb Claim No. KY24K3195038 for the Subpoena.

39. Without legal justification and contrary to the plain language of the Policy, Chubb has refused to treat the ME SOC as a "Related Claim" to the JT SOC and Subpoena.

**D.     Mercer's Demand on Chubb for Reimbursement.**

40. On November 14, 2025, Mercer demanded Chubb reimburse Mercer in excess of $1,000,000, representing amounts Mercer was unreasonably forced to pay for the second self-insured retention.

41. Mercer paid the amounts stated in Paragraph 40 because Chubb unreasonably refused to treat the JT SOC and Subpoena as related to the ME SOC under the Policy's definition of "Related Claims".

42. Chubb responded on January 7, 2026, maintaining its position that the ME SOC is not related to the JT SOC and the Subpoena, and, thus, is not a "Related Claim". Chubb refused to reimburse Mercer.

43. Chubb's refusal to reimburse Mercer is contrary to the terms of the Policy.

44. Chubb has also unreasonably delayed payment of four legal invoices Chubb acknowledged were due and owing to Mercer without a reasonable basis for the delay.

45. In February 2026, Chubb acknowledged its responsibility to pay two legal invoices owed to Mercer for the underlying "Claims".

46. In April, Mercer provided proof of payment for two additional unpaid invoices to Chubb.

47. Chubb delayed reimbursement to Mercer for the four invoices until May 2026.

48. Chubb's delay in remitting payment to Mercer lacked a reasonable basis.

**E.      Damages and Prejudice to Mercer.**

49. As a direct result of Chubb's misconstruction of the Policy terms and its unreasonable delay in payment of covered benefits to Mercer, Mercer has been forced to bear defense fees and costs and other losses from a second self-insured retention that should not apply, in excess of $1,000,000.

50. Mercer has incurred and continues to incur substantial fees and costs in defending the underlying "Claims" and pursuing this coverage dispute.

**FIRST CLAIM FOR RELIEF**
**(Breach of Contract)**

51. Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 50 as if fully set forth herein.

8

52.     Chubb entered into a binding written agreement with Mercer by issuing the Policy, which provides professional liability insurance coverage as described above.

53.     Mercer fully performed its obligations under the Policy, including without limitation paying all applicable premiums, providing timely notice of the "Claims", cooperating with Chubb's investigation, and satisfying the applicable retentions.

54.     Chubb materially breached the Policy by: (a) wrongfully refusing to treat the JT SOC, Subpoena, and ME SOC as "Related Claims" under the Policy, thereby improperly imposing two $1,000,000 self-insured retentions; and (b) failing to timely reimburse Mercer for amounts owed under the Policy.

55.     Chubb's breach of contract is neither excused nor justified under the Policy's terms.

56.     As a direct and proximate result of Chubb's breach, Mercer has suffered damages in an amount to be determined at trial, including in excess of $1,000,000 of unreimbursed defense costs, consequential damages, pre- and post-judgment interest, and other losses recoverable under Colorado law.

**SECOND CLAIM FOR RELIEF**
**(Common Law Bad Faith Breach of Insurance Contract)**

57.     Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 56 as if fully set forth herein.

58.     Pursuant to C.R.S. § 10-3-1103, no entity engaged in the insurance business in the State of Colorado may engage in any unfair or deceptive act or practice when conducting the business of insurance.

59.     Every contract or policy of insurance contains implied covenants of good faith and fair dealing owed by the Insurer to the Insured.

60.    The Policy issued by Chubb to Mercer contains implied covenants of good faith and fair dealing.

61.    Chubb owed Mercer a duty of good faith and fair dealing in connection with its claims for coverage under the Policy.

62.    Pursuant to C.R.S. § 10-3-1104(1)(h), Chubb engaged in the following acts and omissions in connection with Mercer's claims for coverage, all of which are unfair claim settlement practices and breaches of Chubb's duty of good faith and fair dealing:

    a.    Misrepresenting pertinent facts or insurance policy provisions relating to coverage, including mischaracterizing the "Related Claims" provision to deny the JT SOC, Subpoena, and ME SOC are "Related Claims";

    b.    Refusing to consolidate and pay claims without conducting a reasonable investigation based upon all available information;

    c.    Compelling Mercer to institute litigation to recover amounts due under the Policy; and

    d.    Failing to promptly provide a reasonable explanation of the basis in the Policy in relation to the facts or applicable law for refusing to treat the three "Claims" as "Related Claims".

63.    Among other things, Chubb's reversal of its initial position that the JT SOC and the ME SOC were interrelated, without adequate explanation or new facts justifying such reversal, demonstrates that its current position lacks a reasonable basis and was made in bad faith.

64.    Chubb knew its acts were unreasonable and undertaken in bad faith or recklessly disregarded the fact that its acts were unreasonable and undertaken in bad faith.

10

65.     As a direct and proximate result of Chubb's bad faith breach of the insurance contract, Mercer has suffered damages, including but not limited to unreimbursed defense fees and costs, consequential damages, attorneys' fees, pre- and post-judgment interest, and other damages permitted under Colorado law.

### THIRD CLAIM FOR RELIEF
#### (Statutory Unreasonable Delay or Denial, C.R.S. §§ 10-3-1115 and 1116)

66.     Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 65 as if fully set forth herein.

67.     Pursuant to C.R.S. § 10-3-1115, a person engaged in the business of insurance shall not unreasonably delay or deny payment of a claim for benefits owed to or on behalf of a first-party claimant.

68.     Chubb is engaged in the business of insurance in the State of Colorado.

69.     Mercer is a first-party claimant with respect to the Policy issued by Chubb.

70.     Mercer provided timely notice of the underlying "Claims" and fully complied with all conditions precedent under the Policy.

71.     Chubb's basis for refusing to treat the JT SOC, the Subpoena, and the ME SOC as "Related Claims" and for refusing to reimburse Mercer is not supported by the Policy language, the evidence, or applicable law.

72.     Chubb has also unreasonably delayed payment of four legal invoices it acknowledged were due and owing to Mercer without reasonable basis.

73.     Chubb's unreasonable delay and denial of payoff payment of covered benefits owed to Mercer violates C.R.S. § 10-3-1115.

74.    As a direct and proximate result of Chubb's violations under C.R.S. § 10-3-1115, Mercer has sustained damages.

75.    Accordingly, pursuant to C.R.S. § 10-3-1116, Mercer seeks recovery of unpaid covered benefits, reasonable attorneys' fees and costs, pre- and post-judgment interest, and two times the covered benefits owed under the Policy.

**FOURTH CLAIM FOR RELIEF**
**(Declaratory Judgment)**

76.    Plaintiff incorporates by reference the allegations contained in Paragraphs 1 through 75 as if fully set forth herein.

77.    An actual and justiciable controversy exists between Plaintiff and Defendant concerning Defendant's duties and obligations under the Policy.

78.    Pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201, and FED. R. CIV. P. 57, Mercer requests the Court enter a judgment declaring the rights, status, and other legal relations between the parties under the Policy.

79.    Specifically, Mercer requests the Court declare as follows:

   a.    The JT Demand, the JT SOC, the Subpoena, and the ME SOC are "Related Claims" under the Policy's definition and are to be treated as a single "Claim" first made on June 21, 2023, subject to a single $1,000,000 self-retention and a single $5,000,000 Limit of Liability under the Professional Liability Coverage Part;

   b.    A single retention applies to Mercer's Loss, including Defense Costs, arising from the JT Demand, the JT SOC, the Subpoena, and the ME SOC;

12

c.  Chubb is obligated to reimburse Mercer for the improperly imposed second self-retention in excess of $1,000,000, plus any additional amounts improperly withheld; and

d.  Declaratory relief is appropriate and necessary to resolve this dispute and to afford Mercer the relief and certainty to which it is entitled under law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests judgment against Defendant for:

a.  Actual, compensatory, and consequential damages in an amount to be proved at trial, including in excess of $1,000,000 for reimbursement of the improperly imposed self-retention amounts, defense fees, and costs;

b.  All statutory damages available pursuant to C.R.S. §§ 10-3-1115 and 1116, including two times the covered benefits unreasonably delayed or denied, in an amount to be determined at trial and attorneys' fees and costs incurred in pursuing the covered benefits;

c.  Declaratory relief as set forth in the Fourth Claim for Relief;

d.  Pre-judgment and post-judgment interest as allowed by law;

e.  Reasonable attorneys' fees and costs as allowed by law, including under C.R.S. § 10-3-1116; and

f.  For any and all other relief the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims asserted in this action.

Dated July 22, 2026.

Respectfully submitted,

*s/ Joe A. Ramirez*

Joe A. Ramirez
HOLLAND & HART LLP
555 17th Street, Suite 3200
Denver, CO 80202-3921
Telephone: 303.295.8000
JRamirez@hollandhart.com

*s/ Katherine D. Varholak*

Katherine D. Varholak
HOLLAND & HART LLP
555 17th Street, Suite 3200
Denver, CO 80202-3921
Telephone: 303.295.8000
KDVarholak@hollandhart.com

*s/ Shawn A. Eady*

Shawn A. Eady
HOLLAND & HART LLP
555 17th Street, Suite 3200
Denver, CO 80202-3921
Telephone: 303.295.8000
SAEady@hollandhart.com

***Attorneys for Plaintiff Mercer Global Advisors Inc.***